[No. S053937. May 22, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
SEAN HELMS, Defendant and Appellant.

---

## COUNSEL

Mark Shenfield and J. Bradley O'Connell, under appointments by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman, Sharon G. Birenbaum and John R. Vance, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

---

## OPINION

**MOSK, J.**—Defendant received a four-year sentence in Marin Superior Court for possessing a controlled substance, a crime he committed in 1993. He was placed on probation. After that, the voters enacted the three strikes law. About one month later, defendant committed a new offense of possessing a controlled substance, for which he was convicted in Santa Clara Superior Court and sentenced to an indeterminate term under the three strikes law. Finally, the Marin court revoked the probation ordered for his 1993 offense. The court put into effect the four-year sentence it had previously imposed, thus committing defendant to prison. In so doing, it ruled that the three strikes law required defendant to serve his sentence consecutively to his indeterminate term.

The question is whether this procedure violated state law or the ex post facto clauses of the United States or California Constitution as currently interpreted. We conclude that it did not, and we reverse the Court of Appeal's judgment to the contrary.

As quoted here, the Court of Appeal accurately described this case's procedural history:

"[Defendant] was convicted in Marin County of possessing a controlled substance (Health & Saf. Code, § 11350, subd. (a)) with a state prison prior (Pen. Code, § 667.5, subd. (b)). He was sentenced to four years in state

prison, with execution of the sentence suspended and a grant of probation. On March 7, 1994, the three strikes law became effective. (See Stats. 1994, ch. 12, § 1.) Thereafter, and while on probation from Marin County, [he] committed a felony in Santa Clara County that was prosecuted as a three strikes case. In May 1995, he was convicted and sentenced to 25 years to life. The Santa Clara conviction served as the basis for revocation of probation in the Marin County case.

"On the issue of whether the Marin County sentence should run concurrently with or consecutive to the Santa Clara term, the trial court stated that '. . . the 25 years is enough to punish you for all of your offenses, but in this situation what I think does not count, actually what's governing here, I'm looking at the law, I think that the court has no choice. If I'm wrong we'll find out about it, but I think that there is no choice but to impose the four year sentence. [¶] I do think that—you know, you were sentenced under the three strikes law. You'll be gone for a long time. And were it not for that law I think that an appropriate disposition would be to impose the sentence and to make it concurrent, but I don't have that option to be able to do that.' The court then ordered the previously imposed sentence of four years to run consecutive to the twenty-five-year-to-life sentence out of Santa Clara County." (Fn. omitted.)

The Court of Appeal modified the judgment to have the sentences run concurrently. It concluded that to sentence defendant to consecutive terms violated the state and federal ex post facto provisions. It explained: " 'Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated . . . .' [Citation.] [¶] Two lines of cases, which reach different results, have developed for situations involving events occurring both before and after the date of a statute increasing penalties. 'The first focuses on statutes that increase the penalties for repeat or habitual offenders. The second focuses on statutes that alter the consequences of violations of parole.' [Citation.]"

In its brief analysis of this issue, the Court of Appeal acknowledged that recidivist statutes do not necessarily offend ex post facto principles, but decided that defendant's sentence altered the consequences of violating probation, which it likened to parole: "the increased sentence is, in fact, placed on the pre-three strikes offense" and hence was unconstitutional.

Defendant committed his third strike offense on December 8, 1994, 29 days after the voters' decision added section 1170.12 to the Penal Code[1] (*People* v. *Alvarez* (1996) 14 Cal.4th 155, 246 [58 Cal.Rptr.2d 385, 926 P.2d 365]). On this record it is not clear whether defendant was sentenced under section 1170.12 or instead under the parallel provision of section 667, subdivision (e)(2)(B), in the Santa Clara three strikes case. But it makes no difference. Our conclusions apply to both provisions.

Subdivision (c)(2)(B) of section 1170.12 provides: "The indeterminate term described in subparagraph (A) *of paragraph (2) of this subdivision* [i.e., a third strike sentence] shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law. Any other term imposed subsequent to any indeterminate term described in subparagraph (A) *of paragraph (2) of this subdivision* shall not be merged therein but shall commence at the time the person would otherwise have been released from prison." (Italics added.) The italicized words do not appear in section 667, subdivision (e)(2)(B), and subparagraph (A) of section 1170.12, subdivision (c)(2), differs slightly from its counterpart in section 667, subdivision (e)(2)(A), but, as stated, these differences are of no consequence here.

The Court of Appeal analyzed the constitutionality of the final sentence of subdivision (e)(2)(B) of section 667—i.e., the Legislature's requirement that any term imposed following sentencing for a third strike be served consecutively to the term imposed for the third strike conviction. But we take judicial notice (*People* v. *Padilla* (1995) 11 Cal.4th 891, 961, fn. 6 [47 Cal.Rptr.2d 426, 906 P.2d 388]) of an appellate opinion disposing of defendant's 1993 offense—i.e., that for which the Marin Superior Court revoked probation. The opinion announced that "[t]he abstract of judgment is ordered corrected to reflect that sentence was imposed with execution of that sentence suspended." Hence judgment and sentence were imposed in this matter before the Santa Clara Superior Court imposed sentence for defendant's third strike conviction. (See §§ 1203, subd. (a), 1203.1, subd. (a), 1203.2, subd. (c); *Stephens* v. *Toomey* (1959) 51 Cal.2d 864, 870-871 [338 P.2d 182].) Contrary to the Court of Appeal's view, the final sentence of section 667, subdivision (e)(2)(B), appears not to apply, and if not, neither would its counterpart in section 1170.12, subdivision (c)(2)(B).

Nonetheless, the Marin sentence was properly made consecutive to the third strike sentence under the first prong of section 1170.12, subdivision (c)(2)(B), which provides that a third strike term "shall be served consecutive to any other term of imprisonment for which a consecutive term may be

---

[1]Unlabeled section references are to this code.

imposed by law." Subdivision (c)(2) of section 1170.12 prescribes punishment for the third strike offense itself, and though the language of subparagraph (B) thereof is imprecise, the most reasonable interpretation of it is that the voters intended for the third strike term to be served consecutively to any other for which a consecutive term was legally permissible, without regard to the chronology of imposition and execution of judgment and sentence. Hence "any other term," as used for this purpose in section 1170.12, subdivision (c)(2)(B), must include terms imposed before, or at the same time as, the third strike term. Considered as integral parts of a whole that focuses on the three strikes offender, the two prongs of section 1170.12, subdivision (c)(2)(B), ordinarily require that, unless there is some other bar to consecutive sentencing, the three strikes term must be served consecutively to any other to which an offender is also subject, no matter when judgment or sentence to that other term—in this case, defendant's four-year sentence for his 1993 offense—may have been imposed or executed.[2]

Hence, we examine the first sentence of subdivision (c)(2)(B) of section 1170.12. It bears reiterating: "The indeterminate term described in subparagraph (A) of paragraph (2) of this subdivision [i.e., a third strike sentence] shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law."

First we consider defendant's contention that because the voters did not contemplate requiring consecutive sentencing for an offense committed before they enacted the three strikes law, no constitutional question need be reached.

We cannot agree. Although defendant invokes various canons of statutory construction to aid his argument, the consecutive sentence mandate in subdivision (c)(2)(B) of section 1170.12 does not differentiate between those prior offenses committed before the law's enactment and those committed after. Instead, its language is comprehensive: The three strikes term "shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law." That is enough to defeat defendant's

---

[2]Relying on the second sentence of subdivision (e)(2)(B) of section 667, the People contend that " '[s]ubsequent' as used in this subdivision does not refer to the timing of the underlying crime or even the initial imposition of sentence if the sentence was suspended, but to the imposition or execution of any sentence *after* an indeterminate term pursuant to subdivision (e) of section 667 has been imposed." In light of the conclusion stated in the text, we need not consider this argument or the relation, if any, between section 669 or other sentencing laws and the second sentence of the provision that the People discuss.

contention. (See *United States* v. *Gonzales* (1997) __ U.S. __, __ [117 S.Ct. 1032, 1035, 137·L.Ed.2d 132].) Moreover, subdivision (b) of section 667 recites "the intent of the Legislature . . . to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." In enacting section 1170.12's very similar provisions, the voters also had that intent. (*People* v. *Hazelton* (1996) 14 Cal.4th 101, 106-107, 108 [58 Cal.Rptr.2d 443, 926 P.2d 423].) We are not persuaded that the consecutive sentence violates state law.

Next, we consider whether the statutory mandate runs afoul of the ex post facto clauses (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9).

■ We interpret the federal and state ex post facto clauses identically. (*People* v. *McVickers* (1992) 4 Cal.4th 81, 84 [13 Cal.Rptr.2d 850, 840 P.2d 955]; *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 295-296 [279 Cal.Rptr. 592, 807 P.2d 434].) Accordingly, United States Supreme Court precedent not only is binding with respect to the federal clause, but is persuasive with respect to the clause in the California Constitution.

■ In *California Dept. of Corrections* v. *Morales* (1995) 514 U.S. 499, 506-507, footnote 3 [115 S.Ct. 1597, 1601-1602, 131 L.Ed.2d 588, 594, 595], the court clarified that the ex post facto clause applicable to the states is to be analyzed under the analytical framework set forth in *Collins* v. *Youngblood* (1990) 497 U.S. 37 [110 S.Ct. 2715, 111 L.Ed.2d 30]. *Collins* reaffirmed (*id.* at pp. 42-43, 44 [110 S.Ct. at pp. 2719-2720]) the understanding of the ex post facto clause provided in *Beazell* v. *Ohio* (1925) 269 U.S. 167, 169-170 [46 S.Ct. 68, 68, 70 L.Ed. 216], namely "that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*." But *Collins* explained that the third prong of *Beazell*'s formulation is "linked to the prohibition on alterations in 'the legal definition of the offense' or 'the nature or amount of the punishment imposed for its commission.'" (497 U.S. at p. 50 [110 S.Ct. at p. 2723], quoting *Beazell*.) Hence *Collins* was able to simplify *Beazell*, and summarized: "Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." (*Id.* at p. 43 [110 S.Ct. at p. 2719].) In *Morales*, the court reiterated this understanding. (514 U.S. at p. 504 [115 S.Ct. at p. 1601, 131 L.Ed.2d at p. 594].)

■ Because the trial court's procedure did not rely on any change in the definition of defendant's 1993 offense—the current version of subdivision (a) of Health and Safety Code section 11350, has applied since 1988

(Stats. 1987, ch. 970, § 1, p. 3254; Cal. Const., art. IV, § 8, subd. (c))—the question is whether the language at issue here of the three strikes law increased the punishment for defendant's violation of Health and Safety Code section 11350.

The language in question did not; in fact it had nothing to do with defendant's determinate term. Indeed, he will serve the same time on his determinate term as he would have served if the three strikes law had never been enacted. As we have explained, the effect of the three strikes statute is simply to require that the term for the three strikes offense be served consecutively to any other unless there is some other bar to consecutive sentencing, regardless of the chronology of imposition and execution of judgment and sentence. The new law thus has no effect whatsoever on the determinate term for the pre-three strikes offense, much less to increase punishment for it.

For purposes of ex post facto analysis, it does not matter that the effect of the three strikes law on the sentence for defendant's three strikes offense was achieved by an order for consecutive service of the determinate term. "[I]t is the effect, not the form, of the law that determines whether it is *ex post facto*." (*Weaver* v. *Graham* (1981) 450 U.S. 24, 31 [101 S.Ct. 960, 965, 67 L.Ed.2d 17].)

Defendant invokes section 669. This statute, in effect when the Marin offense was committed, requires the court executing a sentence to determine whether that term will run concurrently or consecutively to other terms already in effect. Section 669, defendant argues, thus gave his Marin sentence a potential for concurrency with terms existing when the Marin sentence was executed. Under ex post facto principles, he urges, this potential could not be eliminated by a statute enacted after he committed the Marin offense.

But the three strikes law did not eliminate any potential concurrency of the Marin term as such; as we have explained, it had no impact on the Marin term whatsoever. The new law's only effect was to determine that, whenever imposed or executed, the term for a three strikes offense must be consecutive to all other terms. Nothing in section 669 gave a court power to order that a term, itself permissibly concurrent, be served concurrently to another term that under all circumstances must be served consecutively. Hence, defendant's reliance on section 669 is unavailing.

Defendant cites federal cases in support of his view. These, however, are distinguishable because in each a legislative enactment worsened the

punishment for an offense committed before the enactment, thus "alter[ing] the legal consequences of the defendant's completed acts." (*U.S. v. Meeks* (2d Cir. 1994) 25 F.3d 1117, 1121.) In *Meeks, Schwartz v. Muncy* (4th Cir. 1987) 834 F.2d 396, and *Greenfield v. Scafati* (D.Mass. 1967) 277 F.Supp. 644, affirmed *sub nom. Scafati v. Greenfield* (1968) 390 U.S. 713 [88 S.Ct. 1409, 20 L.Ed.2d 250] (mem. opn.), a postoffense enactment limited the availability of a form of conditional release. By affirming *Greenfield*, the United States Supreme Court announced that such conditions are, as it would later explain, "one determinant of [a defendant's] prison term" (*Weaver v. Graham, supra,* 450 U.S. at p. 32 [101 S.Ct. at p. 966]), if only because "a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." (*Ibid.*)

In this case, however, no alteration of the terms of possible early release occurred. Defendant violated the terms of probation and the court chose to execute the sentence it had previously imposed. It did no more in respect of his 1993 crime, and nothing in the three strikes law compelled it to take any action regarding that earlier offense.

Defendant also contends that the decisions of other state courts support his claim. We find these decisions unpersuasive and decline to follow them.

*Gasby v. State* (Del. 1981) 429 A.2d 165, relied heavily on *Weaver v. Graham*'s broad "disadvantage" formulation (see 450 U.S. at pp. 29 & fn. 13, 33, 34 [101 S.Ct. at pp. 964-965, 966-967]), language the federal high court has since rejected (*California Dept. of Corrections v. Morales, supra,* 514 U.S. at pp. 506-507, fn. 3 [115 S.Ct. at p. 1602, 131 L.Ed.2d at p. 595]; see also *Burrus v. Goodrich* (1995) 194 Wis.2d 655, 667-668 [535 N.W.2d 85, 88-89]). Moreover, even if that language did survive, the three strikes law did not disadvantage defendant in any way, inside or outside the sentence (cf. *Weaver v. Graham, supra,* 450 U.S. at p. 32 [101 S.Ct. at p. 966]), with respect to his previously suspended determinate term.

We also find *State v. White* (1979) 97 Wis.2d 517 [294 N.W.2d 36], unhelpful to defendant. In that case, the court found it unconstitutional under federal and Wisconsin law to impose consecutive sentences on a probationer who committed another crime. The original statute, as applied to the probationer, required a concurrent sentence; the new version gave the trial court discretion to sentence him to a consecutive term and it did so. The

court stated: "We hold that the trial court's imposition of a consecutive sentence in this case amounted to a violation of the constitutional prohibition against *ex post facto* laws. The legislative change made it possible to impose consecutive sentences upon parole revocation, a punishment more onerous to White than was possible under the statute that existed prior to the change." (294 N.W.2d at p. 38.) But *White* does not explain when the probationer committed the other crime—it leaves unclear whether he committed it before or after the legislative change. Evidently the *White* court thought this fact irrelevant, when instead it is critical. *White*'s analysis is too incomplete for the case to serve as persuasive authority here.

In summary, the constitutional prohibition against retroactively increasing punishment for crimes is not implicated. We reverse the Court of Appeal's judgment insofar as it modified the judgment of conviction. In all other respects, we affirm the Court of Appeal's judgment.

George, C. J., Kennard, J., Baxter, J., and Chin, J., concurred.

**WERDEGAR, J.**—I concur in the majority opinion's result and much of its reasoning. I disagree, however, with the statement that "the Marin sentence [the determinate term] was properly made consecutive to the third strike sentence under the first prong of section 1170.12, subdivision (c)(2)(B), which provides that a third strike term 'shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law.'" (Maj. opn., *ante*, at pp. 612-613.) By its terms, the quoted statutory provision governs only the service of sentence for the indeterminate term imposed pursuant to the three strikes law; it says nothing about sentencing or service of sentence on the previously imposed determinate term. The sentencing court therefore erred in believing itself bound to order consecutive service of the determinate term, but erred harmlessly, since the indeterminate sentences must, in any event, be served consecutively to the determinate. I concur in the result because nothing defendant has cited or I have discovered indicates that the order in which these sentences are served affects defendant's actual length of confinement.

Because, as the majority explains, the applicable provisions of the three strikes law do not in any way alter the punishment for defendant's pre-three-strikes offense, this case provides no occasion for considering the permissibility, under the ex post facto clauses, of retroactive changes in laws governing service of parole or probation violation terms. I would therefore

omit the discussion of sister state authority on this question, a discussion with which I am not in full agreement. (Maj. opn., *ante*, at pp. 616-617.)

Brown, J., concurred.